464 U.S. 867
 104 S.Ct. 40
 78 L.Ed.2d 179
 Robert C. GILLIARD, Jr.
v.
MISSISSIPPI
 No. 82-6775
 Supreme Court of the United States
 October 3, 1983
 
 On petition for writ of certiorari to the Supreme Court of Mississippi.
 The petition for writ of certiorari is denied.
 Justice MARSHALL, with whom Justice BRENNAN joins, dissenting from denial of certiorari.
 
 
 1
 Adhering to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, I would vacate the judgment of the Supreme Court of Mississippi insofar as it left undisturbed the death sentence imposed in this case. Gregg v. Georgia, 428 U.S. 153, 231, 96 S.Ct. 2909, 2973, 49 L.Ed.2d 859 (1976) (MARSHALL, J., dissenting). However, even if I believed that the death penalty could constitutionally be imposed under certain circumstances, I would grant certiorari and vacate the death sentence imposed here.
 
 
 2
 For the third time this year, this Court has refused to review a case in which an all-white jury has sentenced a Negro defendant to death after the prosecution used peremptory challenges to remove all Negroes from the jury. See Miller v. Illinois and Perry v. Louisiana decided together with McCray v. New York, 461 U.S. ----, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983) (MARSHALL, J., dissenting from denial of certiorari). The facts of each case follow a now familiar pattern: For-cause challenges by both defense counsel and the prosecution leave an integrated jury panel. The prosecution then resorts to peremptory challenges to remove Negro members of the panel. Despite defense counsel efforts to show that the prosecution has excluded jurors on the basis of race, the trial court rules that defendant has failed to establish systematic exclusion in the manner required by this Court in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The all-white jury proceeds to hear the case and sentence the Negro defendant to death.
 
 
 3
 The present case does not deviate from this pattern in any material respect. Petitioner, who is a Negro, pleaded guilty to killing Grady Chance during an armed robbery of Mr. Chance's store. In accordance with Miss.Code Ann. § 99-19-101 (Supp.1982), a sentencing trial was then held. After for-cause challenges, the prosecution was presented a jury panel including seven Negroes. The prosecution peremptorily challenged the seven Negroes. After defense counsel exercised its peremptory challenges, the panel contained one Negro. The prosecution then used an additional peremptory challenge to remove the Negro. During a hearing held to consider petitioner's motion to quash the jury, the prosecutor took the stand, and offered reasons for three of his peremptory challenges but could not remember why he exercised the other five. Although the prosecutor had used peremptory challenges to remove all the Negro jurors and only the Negro jurors,[1] the trial court nevertheless denied petitioner's motion, and the Mississippi Supreme Court affirmed, relying on Swain v. Alabama, supra, and two of its own precedents that, in turn, had relied on Swain: Gaines v. State, 404 So.2d 557, 560 (Miss.1981); Coleman v. State, 378 So.2d 640, 645 (Miss.1979). An all-white jury then heard the evidence and sentenced petitioner to death.
 
 
 4
 Last Term, when the Court denied petitions for certiorari in the two cases mentioned above, I outlined my objections to the Court's holding in Swain v. Alabama, and expressed my opinion that, regardless of Swain's interpretation of the Equal Protection Clause, the use of peremptory challenges to exclude racial minorities violates a criminal defendant's Sixth and Fourteenth Amendment rights to be tried by a jury selected from a fair cross-section of the community. McCray v. New York, supra, at ----, 103 S.Ct. at 2441 (MARSHALL, J., dissenting); see Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). I continue to hold these views and need not repeat them here.
 
 
 5
 I write today to address those of my Colleagues who agree with me that the use of peremptory challenges in these cases presents important constitutional questions, but believe that this Court should postpone consideration of the issue until more state supreme courts and federal circuits have experimented with substantive and procedural solutions to the problem. Although I appreciate my Colleagues' inclination to delay until a consensus emerges on how best to deal with misuse of peremptory challenges, I believe that for the Court to indulge that inclination on this occasion is inappropriate and ill-advised.
 
 
 6
 When Justice Brandeis originally analogized the states to laboratories in need of freedom to experiment, he was dissenting from a decision by the Court applying a now-discredited interpretation of the Due Process Clause to strike down an Oklahoma statute regulating the sale and distribution of ice. See New State Ice Co. v. Liebmann, 285 U.S. 262, 310-311, 52 S.Ct. 371, 386, 76 L.Ed. 747 (1932). As Justice Brandeis recognized, an overly protective view of substantive due process unnecessarily stifles public welfare legislation at the state level. Since then, however, the power of the states-as-laboratories metaphor has propelled Justice Brandeis' conceit far beyond the sphere of social and economic regulation. Now we find the metaphor employed to justify this Court's abstention from reaching an important issue involving the rights of individual defendants under the federal Constitution.
 
 
 7
 When a majority of this Court suspects that such rights are being regularly abridged, the Court shrinks from its constitutional duty by awaiting developments in state or other federal courts. Because abuse of peremptory challenges appears to be most prevalent in capital cases, the need for immediate review in this Court is all the more urgent. If we postpone consideration of the issue much longer, petitioners in this and similar cases will be put to death before their constitutional rights can be vindicated. Under the circumstances, I do not understand how in good conscience we can await further developments, regardless of how helpful those developments might be to our own deliberations.
 
 
 8
 Moreover, I have serious misgivings about my Colleagues' assumption that many states will, in the foreseeable future, engage in meaningful reconsideration of the discriminatory use of peremptory challenges. In the area of individual rights, state courts traditionally have looked to the federal judiciary for leadership. When decisions of this Court have expanded personal liberties in an area, state judiciaries have followed and, upon occasion, interpreted state constitutional liberties to exceed those guaranteed by the federal constitution. But, conversely, when this Court has announced a clearly defined, but limited federal constitutional protection for a particular right, the state supreme courts have been less willing to develop more generous doctrines under their own state constitutions.
 
 
 9
 Constitutional limitations on prosecutorial use of peremptory challenges are a clear example of how a limiting precedent in this Court inhibits doctrinal development in the states. In 1965 in Swain v. Alabama, a majority of this Court held that the prosecution is free to use peremptory challenges to remove Negroes from the jury in any given case so long as the prosecution does not remove Negroes from juries "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim." 380 U.S., at 223, 85 S.Ct., at 837. Even though Swain v. Alabama has been roundly and regularly criticized by commentators, see sources cited McCray v. New York, supra, 461 U.S., at ---- n. 1, 103 S.Ct., at 2440 n. 1 (MARSHALL, J., dissenting), in the 18 years since Swain was decided only two state supreme courts have interpreted their state constitutions to provide criminal defendants greater protection against discriminatory use of peremptory challenges. People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499 (1978), cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979).
 
 
 10
 Contrary to my Colleagues' assumptions, these two recent decisions by the California and Massachusetts high courts have not inspired other state supreme courts to deviate from the rule of Swain and experiment with new remedies for peremptory challenge misuse. To my knowledge, in the five years since Wheeler and Soares, not a single state supreme court has imposed state constitutional limits on peremptory challenges.[2] In fact, over the same period, at least 19 jurisdictions have considered the issue and, following Swain, reaffirmed their view that the exclusion of Negroes by peremptory challenges is constitutional in the absence of evidence of systematic exclusion.[3]
 
 
 11
 Mississippi is typical. Since 1979, the Mississippi Supreme Court has discussed peremptory challenges in four cases.[4] In all of the cases, the court's analysis of the issue is so cursory that it is possible to reproduce its discussions unabridged. In Coleman v. State, 378 So.2d 640 (Miss.1979), the court wrote:
 
 
 12
 "The appellant makes general allegations that the jury, composed of 11 whites and 1 black, was not a jury of his peers. His contention seems to be that the district attorney's action, in exercising 11 of his peremptory challenges against potential black jurors, was discriminatory.
 
 
 13
 "The record is devoid of any evidence of any discriminatory pattern in the selection of the special venire, the regular venire, the excusing of jurors by the court, or the peremptory challenges exercised by the district attorney. This Court upheld a murder conviction where the State exercised its peremptory challenges to exclude all Negroes from the jury panel. Irving v. State, 228 So.2d 266 (Miss.1969), vacated as to death penalty, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972).[5]" Id., at 645.
 
 
 14
 Next, in Gaines v. State, 404 So.2d 557 (Miss.1981), the court wrote:
 
 
 15
 "Appellant claims that his Sixth and Fourteenth Amendment rights were violated when the prosecution exercised its peremptory challenges on only the black members of the jury venire. Furthermore, the defendant argues that, in the wake of such action, the trial court erred in not quashing the petit jury.
 
 
 16
 "The United States Supreme Court dealt with this issue in Swain v. Alabama, [380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ]. [Quotation omitted.]
 
 
 17
 "For the reasons stated in Swain, the motion to quash the jury was properly denied." Id., at 560.
 
 
 18
 Then in Hughes v. State, 420 So.2d 1060 (Miss.1982), the Mississippi Supreme Court said:
 
 
 19
 "[The victims] are white. The defendants are all black. They allege that the trial court erred in permitting the state to exercise peremptory challenges so that no blacks sat on the jury. There is no claimed error as to the selection of the venire, or as to any challenge by the state for cause. There is no merit to this assignment. Gaines v. State, 404 So.2d 557 (Miss.1981)." Id., at 1062.
 
 
 20
 Finally, the Mississippi Supreme Court discussed the problem in disposing of petitioner's appeal in this case:
 
 
 21
 "After completion of the panel, the appellant requested that the record reflect all persons peremptorily excused by the State were Negroes. Later, after selection of the alternate juror, and sequestration of the jury for the night, appellant filed a motion to quash the panel on that ground. The lower court overruled the motion and the appellant now asserts it was obvious those persons were excused from the jury solely on the basis of race in violation of the Sixth and Fourteenth Amendments in allowing systematic exclusion of Negroes from the jury.
 
 
 22
 "In the capital murder case of Gaines v. State, 404 So.2d 557 (Miss.1981), the same question was presented to this Court. Relying upon Swain v. Alabama, [380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ], the Court held that exercise of such challenges did not constitute error. See also Coleman v. State, 378 So.2d 640 (Miss.1979)." Gilliard v. Mississippi, 428 So.2d 576, 579 (Miss.1983).
 
 
 23
 Although the issue has arisen repeatedly over the past four years, the Mississippi Supreme Court has not reexamined its peremptory challenges under the state constitution. On the contrary, the Court has simply looked to the federal constitution, determined that Swain v. Alabama is still good law, and rejected all claims that use peremptory challenges to exclude members of a particular race from the jury is unconstitutional.
 
 
 24
 While this Court attends the Brandeisian experiments in a handful of state courts, criminal defendants in Mississippi and numerous other states have no legal remedy for what a majority of this Court agrees may well be a constitutional defect in the jury selection process. Under the circumstances, I cannot abide by further delay. I would grant the petition.[6]
 
 
 
 [1]
 The State contends that the prosecution did not peremptorily challenge all Negro jurors in the venire. According to the State, one Negro served as an alternate. The State, however, does not suggest that this juror ever actually served on the jury or participated in its decision to sentence petitioner to death.
 
 
 [2]
 The only state court that has even intimated that the issue is up for reconsideration was an appellate court in New Mexico. See State v. Crespin, 94 N.M. 486, 812 P.2d 716 (N.M.App.1981).
 
 
 [3]
 See Flowers v. State, 402 So.2d 1088, 1093 (Ala.Cr.App.1981); Beed v. State, 271 Ark. 526, 609 S.W.2d 898, 903 (1980); Dopel v. United States, 434 A.2d 449, 457-459 (D.C.App.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981); Neil v. State, 433 So.2d 51 (Fla.App.1983) (question certified to Florida Supreme Court); Blackwell v. State, 248 Ga. 138, 281 S.E.2d 599, 599-600 (1981); People v. Williams, --- Ill.2d ----, --- Ill.Dec. ----, ---- N.E.2d ---- (1983) (rehearing scheduled); State v. Stewart, 225 Kan. 410, 591 P.2d 166, 170-172 (1979); State v. Jones, 408 So.2d 1285, 1290 (La.1982); Lawrence v. State, 51 Md.App. 575, 444 A.2d 478 (1982); Gaines v. State, 404 So.2d 557, 560 (Miss.1981); State v. Johnson, 616 S.W.2d 846, 849 (Mo.App.1981); People v. McCray, 57 N.Y.2d 542, 457 N.Y.S.2d 441, 445, 443 N.E.2d 915, 919 (N.Y.1982), cert. denied, --- U.S. ----, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Lynch, 300 N.C. 534, 268 S.E.2d 161, 168 (1980); Lee v. State, 637 P.2d 879, 881-882 (Okl.Cr.App.1981); Commonwealth v. Henderson, 497 Pa. 23, 438 A.2d 951, 952-956 (1981); State v. Ucero, 450 A.2d 809, 812-813 (R.I.1982) (exclusion based on gender); State v. Thompson, 276 S.C. 616, 281 S.E.2d 216, 220 (1981); Drew v. State, 588 S.W.2d 562, 563 (Tenn.Cr.App.1979); State v. Grady, 93 Wis.2d 1, 286 N.W.2d 607, 611 (Wis.App.1979). (The trend in recent state court decisions was called to my attention by another recently filed petition. See Petition for Certiorari, Teague v. Illinois, No. 82-6981 (filed June 20, 1983).)
 
 
 [4]
 In three of these cases, an all-white or predominantly all-white jury sentenced a Negro defendant to death.
 
 
 [5]
 In Irving, the Mississippi Supreme Court merely paraphrased an earlier opinion and said, "[T]he State is not required to accept jurors simply because they belong to the same ethnic group as the defendant. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953)." Irving v. State, supra, 228 So.2d, at 270 (paraphrasing Shinall v. State, 199 So.2d 251 (Miss.), cert. denied, 389 U.S. 1014, 88 S.Ct. 590, 19 L.Ed.2d 660 (1967)). In both Irving and Shinall, all-white juries sentenced Negro defendants to death.
 
 
 [6]
 The State argues that we should deny the petition because petitioner claims that the trial court denied him a hearing on the prosecutor's use of peremptory challenges, when in fact the trial court held a hearing on precisely this question. While the state is correct that this petition makes ambiguous references to the denial of a hearing, I interpret petitioner's basic claim to be that the prosecutor's actions in this case established a prima facie case of selective exclusion of jurors on the basis of race in violation of the Sixth and Fourteenth Amendments. Petitioner argues, and I agree, that once a defendant has made out such a prima facie case, the burden shifts to the prosecution to show that its peremptory challenges were not impermissibly motivated. This claim was made at trial, and preserved on appeal. See McCray v. New York, supra, 461 U.S., at ----, 103 S.Ct., at 2440 (MARSHALL, J., dissenting).