No. 83–5785.  WILLIAMS v. ILLINOIS.  Sup. Ct. Ill.;
No. 83–5966.  DIXON v. ILLINOIS.  App. Ct. Ill., 1st Dist.; and
No. 83–6199.  YATES v. ILLINOIS.  Sup. Ct. Ill.  Certiorari
denied.  Reported below: No. 83–5785, 97 Ill. 2d 252, 454 N. E.
2d 220; No. 83–5966, 105 Ill. App. 3d 340, 434 N. E. 2d 369;
No. 83–6199, 98 Ill. 2d 502, 456 N. E. 2d 1369.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins,
dissenting.

Adhering to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, I would vacate the judgments of the Supreme Court of Illinois and the Appellate Court of Illinois insofar as they left undisturbed the death sentences imposed in these three cases.  *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting).  However, even if I believed that capital punishment were constitutional under certain circumstances, I would vote to grant these petitions because they present a substantial constitutional challenge to the Illinois state's attorneys' practice of using peremptory challenges to exclude Negro jurors from participating in capital cases.

Hernando Williams, Wendell Dixon, and Lonnie Yates are Negroes.  In unrelated indictments, the people of Illinois charged each of these men with serious felonies, punishable by death under Illinois law.  Each was tried by jury, and each now claims that the prosecution violated the Federal Constitution by using peremptory challenges to remove Negroes from the jury venire.[1] In petitioner Dixon's case, 20% of the jury venire were Negroes. The prosecution used five of seven peremptory challenges to exclude the Negro members from the venire.  An all-white jury then convicted Dixon and sentenced him to death.  In petitioner Williams' case, 22% of the venire were Negroes.  The prosecution used 11 of its 20 peremptory challenges to exclude Negroes, and an all-white jury sentenced Williams to death.  In petitioner Yates' case, the record does not indicate what percentage of the

---

[1] Petitioners Dixon and Yates were both convicted and sentenced by a jury. Petitioner Williams pleaded guilty, and a jury heard only the sentencing phase of his trial.

venire were Negroes, but the record does show that the State used 13 of 16 peremptory challenges to remove Negroes from the venire. The jury that convicted Yates and sentenced him to death included a single Negro.

The claim raised in these petitions is distressingly familiar. Whenever a Negro defendant is charged with a capital offense, there is a substantial chance that the prosecution will employ its peremptory challenges to remove Negroes and other minorities from the jury panel. See *Gilliard* v. *Mississippi*, 464 U. S. 867, 867–868, and n. 3 (1983) (MARSHALL, J., dissenting) (listing cases in 19 different jurisdictions raising the issue since 1979). Illinois provides a striking, but by no means isolated, illustration of the dimensions of the problem. Since 1959, the Supreme Court of Illinois has reviewed at least 33 cases in which criminal defendants have alleged prosecutorial misuse of peremptory challenges to exclude Negro jurors. See *People* v. *Payne*, 99 Ill. 2d 135, 152–153, 457 N. E. 2d 1202, 1210–1211 (1983) (Simon, J., dissenting) (list of cases). Petitioners in these three cases stand at the end of a long line of Negro criminal defendants who claim that the State of Illinois has denied them trial by a fair cross-section of the community.

The intentional exclusion of Negro jurors is particularly pronounced in capital cases in Illinois. Since the enactment of the latest Illinois Death Act, 29 juries have been empaneled to sentence Negro defendants in capital cases. Nineteen of these juries were all-white, and five had only one Negro juror. Illinois Coalition Against the Death Penalty, Death Sentences in Illinois (July 31, 1983). It is simply inconceivable that the racial composition of these juries was the result of statistical anomaly. According to the most recent census figures, 14.65% of the Illinois population is Negro.[2] If the jury-selection process in Illinois were completely race-blind, roughly 17% of all juries would be expected to have one or no Negro jurors. In fact, more than 80% of the Illinois sentencing juries have had less than two Negro members when the defendant was a Negro.

---

[2] Bureau of Census, County and City Data Book 130 (1983). The 14.65% figure is actually conservative since more than half of the capital cases involving Negro defendants were tried in Cook County, which is more than 25% Negro. *Ibid.*

In reviewing petitioner Williams' appeal, the Illinois Supreme Court reviewed these jury-composition statistics prepared by the Illinois Coalition. 97 Ill. 2d 252, 273, 454 N. E. 2d 220, 230 (1983). Despite the clear import of the figures, the Illinois Supreme Court concluded that the statistics were insufficient to establish prosecutorial misconduct under *Swain* v. *Alabama,* 380 U. S. 202 (1965).[3] Since in Illinois *Swain* presents the only limitations on a prosecutor's use of peremptory challenges, the Illinois Supreme Court concluded that the procedure used to select petitioner Williams' jury, like the procedures used in the trials of petitioners Yates and Dixon, was without constitutional defect.

A majority of this Court has already recognized that the exclusion of minority jurors through peremptory challenges is a significant constitutional issue this Court will some day have to address. *McCray* v. *New York,* 461 U. S. 961, 961–962 (1983) (opinion of STEVENS, J., joined by BLACKMUN and POWELL, JJ.); *id.,* at 966–967 (MARSHALL, J., joined by BRENNAN, J., dissenting). As the years pass, it becomes increasingly clear that the problem will not be solved until this Court intervenes. See *Gilliard* v. *Mississippi, supra,* at 873. Over the last 12 months, I have twice urged the Court either to reconsider our decision in *Swain* v. *Alabama, supra,* or to address the distinct question whether the Sixth and Fourteenth Amendments prohibit the States from excluding potential jurors solely on the basis of race. See *McCray* v. *New York, supra,* at 963 (MARSHALL, J., dissenting); *Gilliard* v. *Mississippi, supra.* These petitions present the Court with three more opportunities to protect criminal defendants against jury-selection procedures that are clearly racially discriminatory. Again today, I urge my colleagues to grant

---

[3] The Illinois Supreme Court was critical of the study prepared by the Illinois Coalition Against the Death Penalty and presented by petitioner Williams during his appeal because the study did not indicate how many times defense counsel and the prosecution employed peremptory challenges to exclude minorities in individual cases covered by the study. 97 Ill. 2d, at 273, 454 N. E. 2d, at 230. This criticism reflects the practical impossibility of obtaining relief under *Swain,* which offers defendants protection only if the prosecutor uses peremptory challenges to exclude Negro jurors in "case after case." Not only does the *Swain* standard make a defendant's constitutional rights contingent upon the facts of previous cases, see *McCray* v. *New York,* 461 U. S. 961, 964–965 (1983) (MARSHALL, J., dissenting), but a defendant's opportunity to vindicate those rights depends on other defendants' building adequate records in previous cases.

certiorari on what I believe to be one of the gravest and most persistent problems facing the American judiciary today.

I dissent from the Court's refusal to confront this issue.