(No. 61071.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HERNANDO WILLIAMS, Appellant.

*Opinion filed November 21, 1985.—Rehearing denied February 4, 1986.*

SIMON, J., took no part.

Sheldon Nagelberg, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The petitioner, Hernando Williams, appeals from an order of the circuit court of Cook County dismissing his request for post-conviction relief. The petitioner originally pleaded guilty to charges of murder, armed robbery, aggravated kidnaping, and rape and, on the murder conviction, was sentenced by a jury to death; various terms of imprisonment were imposed for the other convictions. This court affirmed the judgment on direct appeal (*People v. Williams* (1983), 97 Ill. 2d 252), and the

United States Supreme Court denied *certiorari* (*Williams v. Illinois* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 1044 S. Ct. 2364). The petitioner then filed, in the circuit court, a petition for post-conviction relief. Following the dismissal of the petition, the State's motion for a direct appeal to this court was allowed (94 Ill. 2d R. 302(b)), and we now affirm the judgment of the circuit court.

The petitioner filed his post-conviction petition on September 10, 1984, raising as grounds for relief questions concerning his guilty plea and the manner in which the sentencing jury was selected. On October 10, 1984, the circuit judge found that the petition was patently without merit and, pursuant to statute, dismissed it without a hearing. (See Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—2.1.) The court's written order explained that the petition did not raise any new issues, that consideration of the issues presented would be precluded by the doctrine of *res judicata*, and that the petitioner's constitutional rights had not been denied.

On appeal here the petitioner argues that the State's use of its peremptory challenges unconstitutionally excluded blacks from serving on the jury that sentenced him to death; the petitioner is black. The same argument was rejected in the petitioner's original appeal. In an extensive discussion of the question, this court held that the manner in which the prosecution exercised its peremptory challenges was not shown here to have violated the petitioner's right to equal protection under the fourteenth amendment (U.S. Const., amend. XIV; see *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824) or his distinct right, derived from the sixth amendment, to a jury selected from a fair cross-section of the community (U.S. Const., amend. VI; see *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692). (*People v. Williams* (1983), 97 Ill. 2d

252, 273-80.) It has been held that *res judicata* precludes consideration in a post-conviction proceeding of an issue that was determined in the original appeal. (*People v. Gaines* (1984), 105 Ill. 2d 79, 87-88.) Ordinarily, then, that result would obtain here.

The petitioner notes that in *Gaines*, where a similar argument was raised regarding jury selection, the court examined the strength of the evidence on the question, though the same issue had been considered and rejected in the original appeal. The petitioner concludes that a post-conviction showing of necessary evidence may overcome a defense of *res judicata*, and he argues that that showing was made here. In *Swain* the Supreme Court suggested that evidence of the State's systematic and purposeful use of peremptory challenges to exclude blacks from juries could be sufficient to raise the constitutional issue. In satisfaction of that threshold requirement, the petitioner here relies on two studies or reports that he incorporated in his post-conviction petition. The first is a collection of statistics compiled by the Illinois Coalition Against the Death Penalty. Those figures reveal the racial composition of juries in recent cases in Illinois in which the death penalty has been imposed; separate figures are shown for black defendants sentenced to death throughout the State and for black defendants sentenced to death in Cook County. The petitioner's second source of information is an article published in the Chicago Tribune summarizing the findings of a month-long study of jury selection in felony trials of black defendants in Cook County.

This court has considered previously the same or similar information and has found it insufficient. An earlier report similar to the one made by the Coalition and submitted here was considered in the petitioner's original appeal. The court said:

"The defendant's briefs in this court in addition contain statements regarding the composition of 43 juries in recent capital cases in this State. Over half of the juries were all white. Most of the rest of the juries contained only one black. How many peremptory challenges were exercised by the defense and by the State is not indicated. There are no other materials to illustrate that the State has regularly and systematically through the exercise of peremptory challenges excused blacks or other minorities in case after case. None of these materials, it would appear, were presented to the trial court." (*People v. Williams* (1983), 97 Ill. 2d 252, 273.)

The defects noted on direct appeal are still present here. The Coalition's information provides the racial composition of the various juries, but the manners in which those juries were selected are not shown; there is no evidence regarding the State's use of its peremptory challenges in those cases.

The Chicago Tribune article examined the racial composition of the 31 juries that were selected during July 1984 in the circuit court of Cook County in the felony trials of black defendants. (Chicago Tribune, Aug. 5, 1984, sec. 1, at 1.) The article reported that 90 of the 372 jurors, or 24% of those who served, were black; blacks made up 29% of the jury pools in those cases. The article noted, too, that 23% of Cook County residents 18 years or older were black. This information was considered in *People v. Mack* (1984), 105 Ill. 2d 103, 122, where the court said:

"Regardless of the many emotional arguments on this question that have been raised in this court and in our appellate court, there is just no evidence that blacks are systematically and purposefully excluded from serving on juries in Cook County where the defendants are black. In fact, the article in the Chicago Tribune referred to above indicates that the juries in Cook County trying black defendants, on an average, contain almost exactly the same percentage of blacks as does the population of Cook

County. The defendant has demonstrated no need to jeopardize the vitality of a very essential tool of our adversary system, the peremptory challenge, by attaching restrictions and conditions to its use."

Although the newspaper article reported that, in the cases examined, the State used its peremptory challenges at a greater rate against blacks than against whites, the article did not show a systematic attempt to exclude blacks from juries because of their race; moreover, a proportionate number of blacks served on the juries that were selected.

We conclude, then, that the information provided by the petitioner here failed to meet the threshold suggested in *Swain* for raising the constitutional issue. Moreover, the requirement that the jury contain a fair cross-section of the community apparently was satisfied here. The circuit court correctly ruled that the post-conviction petition did not warrant a hearing.

The petitioner also argues that he has a constitutional right to have this appeal heard by the appellate court. Here, the State's motion for a direct appeal to this court (94 Ill. 2d R. 302(b)) was allowed on November 30, 1984; since that time, this court has amended Rule 651, governing appeals in post-conviction proceedings, to provide for their direct appeal in capital cases (103 Ill. 2d R. 651). The validity of those procedures has been determined already (*People v. Gaines* (1984), 105 Ill. 2d 79; *People v. Lewis* (1984), 105 Ill. 2d 226), and we decline to reconsider those decisions here.

For the reasons stated, we affirm the judgment of the circuit court. The clerk of this court is directed to enter an order fixing Tuesday, March 18, 1986, as the date on which the sentence of death entered in the circuit court is to be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963

(Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of the mandate in this case shall be furnished by the clerk of this court to the Director of Corrections, to the warden of the Stateville Correctional Center, and to the warden of the correctional center where the petitioner currently is confined.

*Judgment affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.